## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| TANGLE INC., | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No.: |
| THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A HERETO, | ) ) ) ) ) | |
| Defendants. | ) ) ) ) ) ) | |

## COMPLAINT

Plaintiff TANGLE Inc. hereby alleges as follows against the individuals, corporations, limited liability companies, partnerships, and unincorporated associations and foreign entities identified on **Schedule A** attached hereto (collectively, "Defendants"):

## INTRODUCTION

1.      This action has been filed by Plaintiff to combat online counterfeiters who trade upon Plaintiff's reputation and goodwill by selling and/or offering for sale products in connection with both Plaintiff's TANGLE trademark, which is covered by U.S. Trademark Registration No. 1779055; and copyrights, which are covered by U.S. Copyright Office Registrations No. VA 120-368, VA 1-232-933, VA 1-271-045, VAu 35-392, VAu 35-391, VAu 35-390, VAu 35-389, VAu 35-388, VAu 35-387 (collectively, the "TANGLE Copyright Registrations"). The registrations are valid, subsisting, and in full force and effect. True and correct copies of the federal trademark registration certificates for the TANGLE Trademark is

attached hereto as **Exhibit 1**. True and correct copies of the federal copyright registration certificates for the TANGLE Copyright Registrations are attached hereto as **Exhibit 2**.

2.      The Defendants create numerous fully interactive commercial internet stores operating under the Defendant Domain Names and/or the Online Marketplace Accounts identified in Schedule A attached hereto (collectively, the "Defendant Internet Stores"). The Defendants design the Defendant Internet Stores to appear to be selling genuine Plaintiff products, while selling inferior imitations of Plaintiff's products. The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the counterfeit products offered for sale, establishing a logical relationship between them and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their illegal counterfeiting operation. Plaintiff is forced to file this action to combat Defendants' counterfeiting of Plaintiff's registered trademark and copyrights, as well as to protect unknowing consumers from purchasing unauthorized TANGLE products over the Internet. Plaintiff has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademark and copyrights as a result of Defendants' actions and seek injunctive and monetary relief.

3.      This Court has personal jurisdiction over each Defendant, in that each Defendant conducts significant business in Illinois and in this Judicial District, and the acts and events giving rise to this lawsuit of which each Defendant stands accused were undertaken in Illinois and in this Judicial District. In addition, each Defendant has offered to sell and ship infringing products into this Judicial District.

## JURISDICTION AND VENUE

4.      This Court has original subject matter jurisdiction over the trademark infringement and false designation of origin claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 et seq., 28 U.S.C. § 1338(a)–(b), and 28 U.S.C. § 1331. This Court has original subject matter jurisdiction over the copyright claim pursuant to the Copyright

Laws of the United States, 17 U.S.C. § 101 et seq., 28 U.S.C. § 1338(a)–(b), and 28 U.S.C. § 1331.

5.      This Court has jurisdiction over the unfair deceptive trade practices claim in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants, because each of the Defendants directly targets consumers in the United States, including Illinois, through at least Defendant Internet Stores. Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Internet Stores through which Illinois residents can purchase products bearing counterfeit versions of Plaintiff's trademark. Each of the Defendants has targeted sales from Illinois residents by operating online stores that offer shipping to the United States, including Illinois, accept payment in U.S. dollars, and, on information and belief, has sold products bearing counterfeit versions of Plaintiff's federally registered trademark to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(2) and 1400(a) because Defendants have committed acts of copyright infringement in this judicial district, do substantial business in the judicial district, have registered agents in this judicial district, and reside or may be found in this district.

## THE PLAINTIFFS

7.      Plaintiff is a corporation incorporated under the laws of California and is the registered owner of both the TANGLE Trademark referred to above and with its federal registration attached as Exhibit 1 and the TANGLE Copyright Registrations referred to above and with its federal registrations attached as Exhibit 2.

8.      Plaintiff is a leading toy manufacturer and distributor, and has earned an international reputation for quality, reliability and value. Plaintiff is credited for many breakthroughs that have occurred in the toy industry, including its TANGLE product. Plaintiff is the official source of TANGLE products in the United States, which include the following:





9.     Since at least 1993, the TANGLE Trademark is and has been the subject of substantial and continuous marketing and promotion by Plaintiff. Plaintiff has and continues to widely market and promote the TANGLE Trademark in the industry and to consumers.

Plaintiff's promotional efforts include — by way of example but not limitation — substantial print media, the TANGLE Products' website and social media sites, and point of sale materials.

10. The TANGLE Trademark is distinctive and identifies the merchandise as goods from Plaintiff. The registration for the TANGLE Trademark constitutes prima facie evidence of its validity and of Plaintiff's exclusive right to use that trademark pursuant to 15 U.S.C. § 1057(b).

11. The TANGLE Trademark qualifies as a famous mark, as that term is used in 15 U.S.C. §1125 (c)(1), and has been continuously used and never abandoned.

12. Plaintiff has expended substantial time, money, and other resources in developing, advertising and otherwise promoting the TANGLE Trademark. As a result, products bearing the TANGLE Trademark are widely recognized and exclusively associated by consumers, the public, and the trade as being products sourced from Plaintiff.

13. Plaintiff also owns all exclusive rights, including without limitation the rights to reproduce the copyrighted works in copies, to prepare derivative works based upon the copyrighted works, and to distribute copies of the copyrighted works to the public by sale or other transfer of ownership, or by rental, lease, or lending, in various copyrights for the TANGLE Products, including without limitation copyrights covered by the TANGLE Copyright Registrations. Exemplary images from one of the TANGLE Copyright Registrations are as follows:





## THE DEFENDANTS

14.     Defendants are individuals and business entities who, upon information and belief, reside mainly in the People's Republic of China or other foreign jurisdictions. Defendants conduct business throughout the United States, including within Illinois and in this Judicial District, through the operation of the fully interactive commercial websites and online marketplaces operating under the Defendant Internet Stores. Each Defendant targets the United States, including Illinois, and has offered to sell and, on information and belief, has sold and continues to sell counterfeit TANGLE products to consumers within the United States, including Illinois and in this Judicial District.

## THE DEFENDANTS' UNLAWFUL CONDUCT

15.     The success of the TANGLE brand has resulted in its counterfeiting. Plaintiff has identified numerous domain names linked to fully interactive websites and marketplace listings on platforms such as Amazon and eBay, including the Defendant Internet Stores, which were offering for sale, selling, and importing counterfeit TANGLE products to consumers in this Judicial District and throughout the United States. Defendants have persisted in creating the Defendant Internet Stores. Internet websites like the Defendant Internet Stores are estimated to receive tens of millions of visits per year and to generate over $135 billion in annual online sales.

7

According to an intellectual property rights seizures statistics report issued by the United States Department of Homeland Security, the manufacturer's suggested retail price ("MSRP") of goods seized by the U.S. government in fiscal year 2017 was over $1.2 billion. Internet websites like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year.

16.     On personal knowledge and belief, Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine TANGLE Products. Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Western Union, and PayPal. Defendant Internet Stores often include images and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website. Defendants further perpetuate the illusion of legitimacy by offering "live 24/7" customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the McAfee® Security, VeriSign®, Visa®, MasterCard®, and PayPal® logos.

17.     Plaintiff has not licensed or authorized Defendants to use the TANGLE Trademark or TANGLE Copyright Registrations, and none of the Defendants are authorized retailers of genuine TANGLE Products.

18.     On personal knowledge and belief, Defendants also deceive unknowing consumers by using the TANGLE Trademark without authorization within the content, text, and/or meta tags of their websites to attract various search engines crawling the Internet looking for websites relevant to consumer searches for TANGLE Products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization ("SEO") tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine TANGLE Products. Further, Defendants utilize similar illegitimate SEO tactics to propel new domain names to the top of search results after others are shut down. As such, Plaintiff also seeks to

disable Defendant Domain Names owned by Defendants that are the means by which the Defendants could continue to sell counterfeit TANGLE Products into this District.

19.     On personal knowledge and belief, Defendants also deceive unknowing consumers by using the TANGLE Copyright Registrations without authorization within the product descriptions of their Defendant Internet Stores to attract customers.

20.     On information and belief, Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. For example, it is common practice for counterfeiters to register their domain names with incomplete information, randomly typed letters, or omitted cities or states, as Defendants here have done. And many Defendant Domain Names use privacy services that conceal the owners' identity and contact information. On personal knowledge and belief, Defendants regularly create new websites and Online Marketplace Accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their massive counterfeiting operation, and to avoid being shut down.

21.     On personal knowledge and belief, even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores. For example, some of the Defendant websites have virtually identical layouts, even though different aliases were used to register the respective domain names. In addition, the counterfeit TANGLE products for sale in the Defendant Internet Stores bear similarities and indicia of being related to one another, suggesting that the counterfeit TANGLE products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated. The Defendant Internet Stores also include other notable common features, including use of the same domain name registration patterns, unique shopping cart platforms, accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, HTML user-

defined variables, domain redirection, lack of contact information, identically or similarly priced items and volume sales discounts, similar hosting services, similar name servers, and the use of the same text and images.

22.     In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendants will often register new domain names or Online Marketplace Accounts under new aliases once they receive notice of a lawsuit.[1] Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. Rogue servers are notorious for ignoring take down demands sent by brand owners.[2] Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection. A 2012 U.S. Customs and Border Protection report on seizure statistics indicated that the Internet has fueled "explosive growth" in the number of small packages of counterfeit goods shipped through the mail and express carriers.

23.     Further, counterfeiters such as Defendants typically operate multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operation in spite of Plaintiffs' enforcement efforts. On personal knowledge and belief, Defendants maintain off-shore bank accounts and regularly move funds from their PayPal accounts to off-shore bank accounts outside the jurisdiction of this Court. Indeed, analysis of PayPal transaction logs from previous similar cases indicates that offshore counterfeiters

---

[1] https://www.ice.gov/news/releases/buyers-beware-ice-hsi-and-cbp-boston-warn-consumers-about-counterfeit-goods-during (noting counterfeiters are adept at "setting up online stores to lure the public into thinking they are purchasing legitimate good on legitimate websites")(last visited April 9, 2021).

[2] While discussed in the context of false pharma supply chains, rogue internet servers and sellers are a well-known tactic that have even been covered in congressional committee hearings. https://www.govinfo.gov/content/pkg/CHRG-113hhrg88828/html/CHRG-113hhrg88828.htm (last visited April 9, 2021).

regularly move funds from U.S.-based PayPal accounts to foreign-based bank accounts outside the jurisdiction of this Court.

24.     Defendants, without any authorization or license from Plaintiff, have knowingly and willfully used and continue to use the TANGLE Trademark and TANGLE Copyright Registrations in connection with the advertisement, distribution, offering for sale, and sale of counterfeit TANGLE products into the United States and Illinois over the Internet. Each Defendant Internet Store offers shipping to the United States, including Illinois and, on information and belief, each Defendant has offered to sell counterfeit TANGLE products into the United States, including Illinois.

25.     Defendants' use of the TANGLE Trademark and TANGLE Copyright Registrations in connection with the advertising, distribution, offering for sale, and sale of counterfeit TANGLE Products, including the sale of counterfeit TANGLE products into Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

**COUNT I**

**TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)**

**[Against Defendants Designated in Schedule A]**

26.     Plaintiff repeats and incorporates by reference herein its allegations contained in paragraphs 1-25 of this Complaint.

27.     This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the registered TANGLE Trademark in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The TANGLE Trademark is a highly distinctive mark. Consumers have come to expect the highest quality from Plaintiff's products provided under the TANGLE Trademark.

28.     Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products in connection with the TANGLE Trademark without Plaintiff's permission.

29.     Plaintiff is the registered owner of the TANGLE Trademark and official source of TANGLE Products. The United States Registrations for the TANGLE Trademark (Exhibit 1) is in full force and effect. Upon information and belief, Defendants have knowledge of Plaintiff's rights in the TANGLE Trademark and are willfully infringing and intentionally using counterfeits of the TANGLE Trademark. Defendants' willful, intentional, and unauthorized use of the TANGLE Trademark is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the counterfeit goods among the general public.

30.     Defendants' activities constitute willful trademark infringement and counterfeiting under 15 U.S.C. §§ 1114, 1117.

31.     The injuries and damages sustained by Plaintiff has been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of counterfeit TANGLE products.

32.     Plaintiff has no adequate remedy at law, and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its well-known TANGLE Trademark.

## COUNT II

## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

### [Against Defendants Designated in Schedule A]

33.     Plaintiff repeats and incorporates by reference herein its allegations contained in paragraphs 1-25 of this Complaint.

34.     Defendants' promotion, marketing, offering for sale, and sale of counterfeit TANGLE products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' counterfeit TANGLE products by Plaintiff.

35.     By using the TANGLE Trademark in connection with the sale of counterfeit TANGLE products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the counterfeit TANGLE products.

36.     Defendants' conduct constitutes willful false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the counterfeit TANGLE products to the general public under 15 U.S.C. §§ 1114, 1125.

37.     Plaintiff has no adequate remedy at law, and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its brand.

## COUNT III

## VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT

## (815 ILCS § 510/1, et seq.)

### [Against Defendants Designated in Schedule A]

38.     Plaintiff repeats and incorporates by reference herein its allegations contained in paragraphs 1-25 of this Complaint.

39.     Defendants have engaged in acts violating Illinois law including, but not limited to, passing off their counterfeit TANGLE products as those of Plaintiffs, causing a likelihood of confusion and/or misunderstanding as to the source of their goods, causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with genuine TANGLE products, representing that their products have Plaintiff's approval when they do not, and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public.

40.     The foregoing acts of Defendants constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510/1, et seq.

41.     Plaintiff has no adequate remedy at law, and Defendants' conduct has caused Plaintiff to suffer damage to their reputation and goodwill. Unless enjoined by the Court, Plaintiff will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

**COUNT IV**

**COPYRIGHT INFRINGEMENT (17 U.S.C. § 101, et seq.)**

**[Against Defendants Designated in Schedule A]**

42.     Plaintiff repeats and incorporate by reference herein its allegations contained in paragraphs 1-25 of this Complaint.

43.     Plaintiff owns all exclusive rights, including without limitation the rights to reproduce the copyrighted work in copies, to prepare derivative works based upon the copyrighted work, and to distribute copies of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending, in various copyrights for the TANGLE products, including without limitation copyrights covered by the TANGLE Copyright Registrations.

44.     Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products in connection with the TANGLE copyrights without Plaintiff's permission.

45.     Defendants had access to the TANGLE products incorporating Plaintiff's registered copyrights before Defendants created their Defendant Internet Stores.

46.     Upon information and belief, Defendants have directly copied Plaintiff's copyrights for the TANGLE products. Alternatively, Defendants' representations of Plaintiff's copyrights for the TANGLE products in the Defendant Internet Stores are strikingly similar, or at the very least substantially similar, to Plaintiff's copyrights for the TANGLE products and constitute unauthorized copying, reproduction, distribution, creation of a derivative work, and/or public display of Plaintiff's copyrights for the TANGLE products. As just one example, Defendants deceive unknowing consumers by using the TANGLE copyrights without authorization within the product descriptions of their Defendant Online Store to attract customers as follows:

Exemplary Picture of Plaintiff's Copyright          Defendant Internet Store selling
                                                    Infringing Tangle Products



47.     Defendants' exploitation of Plaintiff's copyrights for the TANGLE products in the Defendant Internet Stores constitutes infringement of Plaintiff's copyrights for the TANGLE products.

48.     On information and belief, Defendants' infringing acts were willful, deliberate, and committed with prior notice and knowledge of Plaintiff's copyrights. Each Defendant willfully, wantonly, and in conscious disregard and intentional indifference to the rights of Plaintiff made and distributed in the United States, including this District, caused to be made and distributed in the United States, including this District, and aided, abetted, contributed to, and participated in the unauthorized making and distribution of the infringing Defendant Online Stores. Each Defendant either knew, or should have reasonably known, that Plaintiff's TANGLE products were protected by copyright and their representations infringed on Plaintiff's copyrights. Each Defendant continues to infringe upon Plaintiff's rights in and to the copyrighted work.

49.     As a direct and proximate result of their wrongful conduct, Defendants have realized and continue to realize profits and other benefits rightfully belonging to Plaintiff. Accordingly, Plaintiff seeks an award of damages pursuant to 17 U.S.C. § 504.

50.     In addition to Plaintiff's actual damages, Plaintiff is entitled to receive the profits made by the Defendants from their wrongful acts, pursuant to 17 U.S.C. § 504(b). Each Defendant should be required to account for all gains, profits, and advantages derived by each Defendant from their acts of infringement.

51.     In the alternative, Plaintiff is entitled to, and may elect to choose statutory damages pursuant to 17 U.S.C. § 504(c), which should be enhanced by 17 U.S.C. § 504(c)(2) because of Defendants' willful copyright infringement.

52.     Plaintiff is entitled to, and may elect to choose, injunctive relief under 17 U.S.C. § 502, enjoining any use or exploitation by Defendants of their infringing work and for an order under 17 U.S.C. § 503 that any of Defendants' infringing products be impounded and destroyed.

53.     Plaintiff seeks and is also entitled to recover reasonable attorneys' fees and costs of suit pursuant to 17 U.S.C. § 505.

54.     Plaintiff has no adequate remedy at law, and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its well-known TANGLE copyrights.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants and each of them as follows:

1.      That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a.      using the TANGLE Trademark or TANGLE Copyright Registrations or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising,

offering for sale, or sale of any product that is not a genuine TANGLE product or is not authorized by Plaintiff to be sold in connection with the TANGLE Trademark or TANGLE Registered Copyrights;

b.     passing off, inducing, or enabling others to sell or pass off any product as a genuine TANGLE product or any other product produced by Plaintiff that is not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the TANGLE Trademark or TANGLE Copyright Registrations;

c.     committing any acts calculated to cause consumers to believe that Defendants' counterfeit TANGLE products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

d.     further infringing the TANGLE Trademark or TANGLE Copyright Registrations and damaging Plaintiff's goodwill;

e.     otherwise competing unfairly with Plaintiff in any manner;

f.     shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear any Plaintiff trademark or copy any Plaintiff copyright, including the TANGLE Trademark or TANGLE Copyright Registrations or any reproductions, counterfeit copies, or colorable imitations thereof;

g.     using, linking to, transferring, selling, exercising control over, or otherwise owning the Online Marketplace Accounts, the Defendant Domain Names, or any other domain name or Online Marketplace Account that is being used to sell or is the means by which Defendants could continue to sell counterfeit TANGLE Products; and

17

h.      operating and/or hosting websites at the Defendant Domain Names and any other domain names registered or operated by Defendants that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product bearing the TANGLE Trademarks or TANGLE Copyright Registrations or any reproduction, counterfeit copy or colorable imitation thereof that is not a genuine TANGLE Product or not authorized by Plaintiff to be sold in connection with the TANGLE Trademark or TANGLE Copyright Registrations.

2.      That Defendants, within fourteen (14) days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon Plaintiff a written report under oath setting forth in detail the manner and form in which Defendants have complied with paragraph 1 above;

3.      Entry of an Order that, at Plaintiff's choosing, the registrant of the Defendant Domain Names shall be changed from the current registrant to Plaintiff, and that the domain name registries for the Defendant Domain Names, including, but not limited to, VeriSign, Inc., Neustar, Inc., Afilias Limited, CentralNic, Nominet, and the Public Interest Registry, shall unlock and change the registrar of record for the Defendant Domain Names to a registrar of Plaintiff's selection, and that the domain name registrars take any steps necessary to transfer the Defendant Domain Names to a registrar of Plaintiff's selection; or that the same domain name registries shall disable the Defendant Domain Names and make them inactive and untransferable;

4.      Entry of an Order that, upon Plaintiff's request, those in privity with Defendants and those with notice of the injunction, including any online marketplaces such as Amazon, eBay, social media platforms such as Facebook, YouTube, LinkedIn, Twitter, Internet search engines such as Google, Bing and Yahoo, web hosts for the Defendant Domain Names, and domain name registrars, shall:

a.      disable and cease providing services for any accounts through which Defendants engage in the sale of counterfeit TANGLE products using the

TANGLE Trademark or TANGLE Copyright Registrations, including any accounts associated with the Defendants listed on Schedule A;

b.   disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit TANGLE products using the TANGLE Trademark or TANGLE Copyright Registrations; and

c.   take all steps necessary to prevent links to the Defendant Domain Names identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Domain Names from any search index.

5.     That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the TANGLE Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117.

6.     In the alternative, that Plaintiff be awarded statutory damages pursuant to 15 U.S.C. § 1117(c) of not less than $1,000 and not more than $2,000,000 for each and every use of the TANGLE Trademark and statutory damages of not less than $750 and not more than $30,000 for each and every infringement of Plaintiff's copyrights pursuant to 17 U.S.C. § 504(c), which should be enhanced to a sum of not more than $150,000 by 17 U.S.C. § 504(c)(2) because of Defendants' willful copyright infringement;

7.     That Plaintiff be awarded its reasonable attorneys' fees and costs; and

8.     Award any and all other relief that this Court deems just and proper.

Dated:  July 23, 2021

/s/ William E. Walsh
William E. Walsh
Murphy & McGonigle, P.C.
300 North LaSalle Street
Suite 5555
Chicago, IL 60654
(312) 820-5114
wwalsh@mmlawus.com

*Attorneys for Plaintiff*